# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TERRENCE M. WILLIAMS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-1549** |
| **BURL CAIN, WARDEN** | **SECTION: "H"(1)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Terrence M. Williams, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. On July 24, 2008, he was convicted by a jury of armed robbery under Louisiana law.[1] On August 21, 2008, he was sentenced on that conviction to a term of forty-nine years imprisonment without benefit of parole, probation, or suspension of sentence.[2] On

---

[1] State Rec., Vol. 10 of 16, transcript of July 24, 2008, p. 12; State Rec., Vol. 7 of 16, minute entry dated July 24, 2008; State Rec., Vol. 7 of 16, jury verdict form. Petitioner was simultaneously tried on six misdemeanor charges: flight from an officer; resisting an officer; three counts of battery on a police officer; and reckless operation of a vehicle. The judge, who was the trier of fact with respect to those charges, likewise found petitioner guilty of those crimes. State Rec., Vol. 10 of 16, transcript of July 24, 2008, p. 14.

[2] State Rec., Vol. 10 of 16, transcript of August 21, 2008; State Rec., Vol. 7 of 16, minute entry dated August 21, 2008. On that same date, he was also sentenced on the misdemeanor convictions, receiving concurrent sentences of

December 29, 2009, the Louisiana Fifth Circuit Court of Appeal vacated his sentence based on an erroneous belief that the trial court had failed to rule on a pending motion for new trial prior to sentencing.[3]  The matter was therefore remanded to the trial court for a hearing on the motion for new trial, and petitioner's right to appeal his conviction and sentence was preserved if the ruling was adverse.[4]

On March 25, 2010, the trial court then again denied the motion for new trial and sentenced petitioner to a term of forty-nine years imprisonment without benefit of parole, probation, or suspension of sentence.[5]  Petitioner again appealed, and the Louisiana Fifth Circuit Court of Appeal affirmed his conviction and sentence.[6]  His related writ applications were thereafter likewise denied by the Louisiana Supreme Court[7] and the United States Supreme Court.[8]

On October 1, 2013, petitioner filed an application for post-conviction relief with the state district court.[9]  That application was denied,[10] and his related writ applications were similarly denied by the Louisiana Fifth Circuit Court of Appeal[11] and the Louisiana Supreme Court.[12]

Petitioner thereafter filed the instant federal application seeking habeas corpus relief.[13]  The state filed a response conceding that the application is timely and that petitioner has exhausted his

---

six months on each conviction except for the reckless operation of a vehicle conviction for which he received ninety days.

[3] The transcript reflects that the trial court in fact denied the motion prior to sentencing.  State Rec., Vol. 10 of 16, transcript of August 21, 2008, p. 5 ("[T]he Court has reviewed the Defense Motion for a New Trial, and does not believe that the grounds lie for a new trial and as such I'm going to deny the Motion for a New Trial.").

[4] State v. Williams, 30 So.3d 975 (La. App. 5th Cir. 2009); State Rec., Vol. 8 of 16.

[5] State Rec., Vol. 8 of 16, transcript of March 25, 2010; State Rec., Vol. 8 of 16, minute entry dated March 25, 2010.

[6] State v. Williams, 87 So.3d 106 (La. App. 5th Cir. 2011); State Rec., Vol. 8 of 16.

[7] State v. Williams, 91 So.3d 966 (La. 2012); State Rec., Vol. 13 of 16.

[8] Williams v. Louisiana, 133 S. Ct. 580 (2012).

[9] State Rec., Vol. 12 of 16.

[10] State Rec., Vol. 12 of 16, Order dated February 21, 2014.

[11] Williams v. Cain, No. 14-KH-206 (La. App. 5th Cir. Apr. 24, 2014); State Rec., Vol. 14 of 16.

[12] State ex rel. Williams v. State, 162 So.3d 394 (La. 2015); State Rec., Vol. 14 of 16.

[13] Rec. Doc. 3.

remedies in the state courts; however, the state argues that he is not entitled to relief on the merits.[14] Petitioner filed a reply to the state's response.[15]

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or

---

[14] Rec. Doc. 13.
[15] Rec. Doc. 14.

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted).  Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law."  Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).  The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one."  Bell, 535 U.S. at 694.  Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief.  Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so.  As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
> If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts –

from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein.  White v. Woodall, 134 S. Ct. 1697, 1701 (2014).

## II.  Facts

In the second direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts of this case as follows:

> On July 29, 2005, at approximately 5:45 a.m., Assistant Manager Jennifer Veazey arrived at New Orleans Hamburger and Seafood Company at 6920 Veterans Boulevard to open the restaurant for business.  After Ms. Veazey parked her car and walked toward the restaurant, she was approached by an African-American male with a gun in his hand.  He was wearing dark clothing, a hat, and gloves, and had something covering his face.  The man told Ms. Veazey to unlock the doors, she complied, and they went inside the restaurant.  As they entered the restaurant, Ms. Veazey silently triggered the restaurant's security alarm using the panic button on a fob on her keychain.
> Next, the armed man instructed Ms. Veazey to go into the business' office and open the safe.  After she opened the safe, the man handed her a black bag, into which Ms. Veazey put some of the money from the safe.  The man then directed Ms. Veazey to take a seat in a chair in the office.  The man restrained her by taping her to the chair with duct tape that he was carrying with him.  Finally, the man took the keys to Ms. Veazey's car and left.  Although Ms. Veazey could not fully free herself from her restraints, she eventually struggled to access her cell phone and dialed 911 to alert the Jefferson Parish Sheriff's Office to the robbery and her situation.
> Deputy Stacie Poche Gurviche Taranto (hereinafter "Poche") of the Jefferson Parish Sheriff's Office (JPSO) was the first responding officer.  As Deputy Poche approached the New Orleans Hamburger and Seafood Company, she saw an African-American man walking from the front door to the only vehicle in the parking lot.  He was wearing dark clothes, a dark hat, dark sunglasses, and tan gloves.  Deputy Poche activated her lights and sirens then followed the vehicle onto Veterans Boulevard.  When the stolen vehicle reached Downs Boulevard, the main entrance to Lafreniere Park, the fleeing driver turned right.

The absconding driver was traveling at a high rate of speed so he did not make the turn into the park and collided with the concrete median. The driver of the stolen vehicle stopped momentarily, put the vehicle into reverse, and backed into Deputy Poche's police vehicle.

Next, the fleeing driver threw the car into gear, accelerated, turned right onto Madewood, and again stopped in the middle of the street. When Deputy Poche saw defendant's reverse lights come on, she attempted to avoid a second collision but the fleeing driver backed into the deputy's vehicle a second time.

Next, the escaping driver traveled up Madewood and turned right onto Oak Grove, which is a dead-end street. Again, the fleeing driver backed up, and again, rammed Deputy Poche's vehicle.

At this point, the fleeing driver traveled onto David Drive, where he ran a red light and collided with a second police unit, which was driven by Deputy David Chaplain on his way to assist Deputy Poche. In this collision, the stolen vehicle struck the front of Deputy Chaplain's car, nearly detaching the front bumper from the vehicle. The impact of the collision turned Deputy Chaplain's car 180 degrees.

Afterward, the fleeing driver, who was traveling up to 90 miles per hour, hit gravel and rocks in a construction area on David Drive, which caused the stolen vehicle to fishtail and strike the concrete lane divider on David Drive. After this impact, the stolen vehicle became airborne, flipped several times, and, finally, collided with a tree. The armed robbery suspect immediately jumped out of the vehicle's passenger-side window and ran between some houses on David Drive.

Deputy Chaplain chased the fleeing suspect, who hurdled several fences and ignored the deputy's instruction to stop. When Deputy Chaplain caught up to the subject, Deputy Chaplain attempted unsuccessfully to subdue him using pepper spray.

Within a few moments, other officers arrived and, together, the officers attempted to handcuff the man. However, the suspect kicked, struck, and punched several of the officers to avoid being handcuffed. At that point, several officers deployed their tasers, which had no effect on the subject. Finally, five deputies physically restrained the subject so that another deputy could handcuff him. A short while later, Detective Craig Pond brought the victim, Ms. Veazey, to the apprehension location, where she positively identified defendant as the man that robbed her at gunpoint.

When defendant was apprehended near the backyard of 2004 David Drive, defendant was wearing a blue t-shirt around his neck. That t-shirt had holes cut for eyes like a mask. Defendant was also wearing jeans underneath his sweatpants. At that time, Deputy Stanley Brown removed a partial roll of duct tape, quarter wrappers, and $22.25 worth of quarters from the pocket of defendant's pants. Detective Kevin Balser subsequently took defendant to the hospital for medical treatment, which is standard procedure if a subject is exposed to pepper spray.

After defendant was secured for transport, Deputy Brown searched the area around the site where defendant was apprehended. In the backyard area, Deputy Brown recovered a banded stack of one-dollar bills, totaling $50.00, on the ground

next to a black bag. The black bag contained U.S. currency, two smaller bank bags, a pair of tan work gloves, and a pair of black, plastic-framed sunglasses. The currency that was loose in the black bag consisted of $245.00 in one-dollar bills, $20.50 in quarters, and $120.00 in rolls of quarters.

Further, the blue Whitney bag that was inside of the black bag contained $2.00 in one-dollar bills, $20.00 in five-dollar bills, $1,970.00 in ten-dollar bills, one quarter and 23 poker receipts. The yellow Pontchartrain State bank bag inside of the black bag contained U.S. currency consisting of $720.00 in twenty-dollar bills, $330.00 in ten-dollar bills, $550.00 in five-dollar bills, and $80.00 in one-dollar bills.

Next, Deputy Brown searched the stolen vehicle that defendant had been driving and recovered a loaded[FN3] Smith and Wesson .9 mm pistol from between the driver's seat and the door of the vehicle. Deputy Brown also recovered a black cap, a quarter-roll wrapper, and loose change from inside the stolen vehicle that defendant was driving. At trial, the owner of the vehicle stated that neither the gun nor the currency were her property.

> [FN3] According to Deputy Brown, the firearm contained 13 bullets in the magazine and one bullet in the chamber.

Defendant testified on his own behalf at trial. Defendant admitted that he had previously been convicted of first degree robbery and simple escape.

Defendant testified that he was an amateur boxer and he was jogging as part of his training on the morning in question. Defendant explained that, while he was jogging, he noticed a police chase, so he altered his usual jogging route. He was surprised when he was knocked to the ground by officers, handcuffed, and interrogated.

Defendant did identify blue jean shorts, a belt, and a pair of shoes from evidence as the clothes that he wore on the morning in question, but denied that the sweatpants were his. Defendant claimed that officers forcibly placed the sweatpants on him. He denied any involvement with the robbery of New Orleans Hamburger and Seafood or Ms. Veazey. After hearing all of the testimony and reviewing the evidence, the twelve-person jury found defendant guilty as charged.[16]

### III.  Petitioner's Claims

### A.  Restraints Used at Trial

In his first claim, petitioner alleges:

> The trial court violated Mr. Williams' right to a Fair Trial and Due Process of Law when it ordered defendant to be shackled to the floor with leg irons,

---

[16] State v. Williams, 87 So. 3d 106, 107-09 (La. App. 5th Cir. 2011); State Rec., Vol. 8 of 16.

handcuffed and an additional chain employed around the handcuffs that bolted defendant bent down towards the floor when he testified in his defense and during his trial, which destroyed the presumption of innocence in violation of the Fifth, Sixth, and Fourteenth Amendment.[17]

On direct appeal, the Louisiana Fifth Circuit Court of Appeal denied that claim, holding:

[D]efendant raises the same issue in his counseled and *pro se* assignments of error: the trial court committed reversible error by requiring defendant to remain seated, shackled, and handcuffed throughout trial in the presence of the jury because such an extreme display of security robbed appellant of the presumption of innocence and the right to a fair trial.

The State responds that defense counsel only objected to defendant being shackled and, therefore, defendant is precluded from raising on appeal the issue of him being handcuffed. It further responds that the trial judge was correct in shackling defendant based on the circumstances surrounding defendant's arrest, defendant's aggression during a pre-trial hearing, and his prior simple escape conviction. The State further asserts that the defendant cannot demonstrate prejudice because the trial judge was careful to safeguard defendant's constitutional rights even though he was shackled.

As the State correctly notes, defense counsel only objected to defendant being shackled; she did not object to him being handcuffed. Because a new basis for an objection may not be raised for the first time on appeal, our review will be limited to the issue of shackling. State v. Hidalgo, 95-319, p. 8 (La.App. 5 Cir. 1/17/96), 668 So.2d 1188, 1194-95.

Ordinarily, a defendant before the Court should not be shackled, handcuffed, or garbed in any manner destructive of the presumption of his innocence and of the dignity and impartiality of judicial proceedings. State v. Addison, 08-461, p. 23 (La.App. 5 Cir. 2/10/99), 8 So.3d 707, 721 (citing State v. Wilkerson, 403 So.2d 652, 659 (La. 1981)). Exceptional circumstances, however, may require the trial court, within its discretion, to restrain a defendant for reasons of courtroom security or order or where the defendant's past conduct reasonably justifies apprehension that he may attempt to escape. Id. In order for an appellate court to find reversible error, the record must show an abuse of the trial court's discretion with respect to shackling that resulted in clear prejudice to the accused. Id., 08-461 at 23, 8 So.3d at 721-22.

On February 28, 2008, at the suppression hearing, the trial judge heard testimony from the victim and several officers regarding the armed robbery and the ensuing chase and capture of defendant. The trial judge heard that defendant fled the robbery location in the victim's vehicle. Further, while fleeing police at a speed of 90 miles per hour in a stolen vehicle, defendant struck one police unit three times, ran a red light, then struck a second police unit. Defendant only changed his method

---

[17] Rec. Doc. 3, p. 5.

of escape from driving to running after he struck a concrete barrier in the stolen vehicle, which caused the vehicle to become airborne, flip several times, then collide with a tree.

The trial judge also heard a number of deputies testify that they attempted to subdue defendant with tasers and pepper spray to no avail. Lastly, the trial judge heard that defendant vigorously fought at least five male and female police officers, who had trouble subduing him enough to finally handcuff him. Deputy Brown of the JPSO testified that defendant's struggle was "one of the most serious resisting arrests I've ever seen."

At a lengthy pre-trial hearing on March 19, 2008, the trial judge discussed numerous matters with the prosecutor and defense counsel. At this hearing, the prosecutor reminded the trial judge that defendant forcibly escaped from custody while he was being housed outside of Jefferson Parish subsequent to Hurricane Katrina. He escaped to Tennessee where he remained for a period of time longer than one year.

Further, during this hearing, defendant asked to address the court, which the trial judge informed defendant was defense counsel's job. When the trial judge began speaking, defendant interrupted him. During this exchange, defendant told the trial judge, "Please, just hold on for a second while I rap on, Your Honor."

Further, during the next exchange, on at least four occasions, defendant interrupted the trial judge. In response, the trial judge stated:

> I'm trying to keep the atmosphere in here as light as I can because I don't want things to escalate.
>
> You have challenged the system dramatically with the circumstances of your arrest as they were testified to by the arresting officers. As such, I've got real live security concerns with trying your case, okay.

Defendant continued to argue and interrupt, to which the trial judge replied,

> Listen to me. I'm trying not to let you get yourself in deeper as far as the security that I'm going to require during the trial.
>
> Okay, I'm going to have you shackled, you're going to be sitting, you'll be dressed in civilian clothes. I'm going to have you shackled and you're going to sit at defense table, but you'll be handcuffed and shackled, okay.
>
> I'm trying not to also have you gagged, okay ... I'm trying. But, I'm telling you you're pushing me and I'm trying to get you to stop.
>
> I typically don't shackle people if I can help it. It's a sheriff decision, but I believe that people shouldn't be shackled if I can help it, okay. I'm telling you you've already got me passed [sic] that.

> I'm going to have you handcuffed, I typically don't do that.
> I'm asking for it because I'm concerned from a security standpoint.
>      Now, the last step, I'm going to have you in here unless you
> just get so out of hand that I can't do it and I've never, I've never,
> ever had that kind of trouble with anybody so I don't anticipate it.
>      But, I'm telling you the next step is for me to have you
> gagged and I don't want to do that.

At that hearing, defense counsel objected to the shackling of defendant.

In State ex rel. Miller v. Henderson, 329 So.2d 707 (La. 1976), defendant challenged, on post-conviction, the fact that he was handcuffed and shackled during his second trial. The Louisiana Supreme Court found that the trial court did not abuse its discretion since its decision was based, in part, on the accused's past escape record.

In State v. Colvin, 452 So.2d 1214 (La.App. 2 Cir.1984), writ denied, 457 So.2d 1199 (La. 1984), defendant complained that prejudicial error occurred when his motion to have leg irons, handcuffs, and transport belt removed during trial was denied. A deputy testified that Colvin had been restrained because of prior misbehavior in court and during transportation.

Our brethren on the Second Circuit found that the trial court was justified in refusing to allow removal of defendant's restraints considering that defendant had attempted to escape twice and had made aggressive statements toward the judge in court at an earlier time and had to be forcibly removed from the courtroom. The Second Circuit noted that the restraints were handled in the least obtrusive manner possible, and the trial judge instructed the jury not to be prejudiced by the fact that defendant was shackled and handcuffed during trial. Id., 452 So.2d at 1219-20.

In the instant case, we find that the trial judge did not abuse his discretion by shackling defendant. Here, testimony at pre-trial hearings and during trial revealed that defendant had little regard for the safety of the public, police officers, and himself during his high-speed flight from officers.

First, defendant presented extreme resistance to arrest through flight and fight. During his initial flight from arrest, he collided with at least two police cars while driving a stolen vehicle at high rates of speed.

Once his flight was stopped, he continued to fight. It took at least five officers working together to handcuff defendant at the time of arrest due to defendant's size and strength. Further, neither tasers nor pepper spray were effective in subduing defendant.

Moreover, the trial judge specifically stated that he was concerned that defendant might lose his temper during trial and hurt his defense attorney. Taking into account all of the foregoing as well as defendant's status as an amateur boxer, his aggressive and insistent manner in speaking to the trial judge at several pre-trial hearings, and his prior conviction for simple escape, the record clearly supports the trial judge's grave concern for the safety of the jury, the attorneys, the witnesses, and even the defendant, in his courtroom during trial.

Additionally, the trial judge took careful precautions throughout the four day trial to ensure that the jury did not see defendant in shackles. There is nothing in the record to show that the jury saw the restraints. Thus, defendant has not demonstrated that any prejudice resulted from his legs being shackled. State v. Washington, 430 So.2d 641 (La. 1983). In light of the foregoing, we find no error in the trial judge's decision to shackle the defendant.[18]

Without assigning additional reasons, the Louisiana Supreme Court then likewise denied relief.[19]

Petitioner's claim that his rights were violated by the use of visible shackles in front of the jury presents a mixed question of law and fact. See Logan v. Cain, Civ. Action No. 11-2381, 2013 WL 3293659, at *16 (E.D. La. June 28, 2013). Therefore, this Court must defer to the state court decision rejecting that claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). For the following reasons, petitioner has made no such showing in this case.

The United States Supreme Court has set forth the clearly established federal law with respect to such claims:

We first consider whether, as a general matter, the Constitution permits a State to use visible shackles routinely in the guilt phase of a criminal trial. The answer is clear: The law has long forbidden routine use of visible shackles during the guilt phase; it permits a State to shackle a criminal defendant only in the presence of a special need.

This rule has deep roots in the common law. In the 18th century, Blackstone wrote that "it is laid down in our antient books, that, though under an indictment of the highest nature," a defendant "must be brought to the bar without irons, or any manner of shackles or bonds; unless there be evident danger of an escape." 4 W. Blackstone, Commentaries on the Laws of England 317 (1769) (footnote omitted); see also 3 E. Coke, Institutes of the Laws of England *34 ("If felons come in judgement to answer, ... they shall be out of irons, and all manner of bonds, so that their pain shall not take away any manner of reason, nor them constrain to answer, but at their free will"). Blackstone and other English authorities recognized that

---

[18] State v. Williams, 87 So. 3d 106, 109-12 (La. App. 5th Cir. 2011); State Rec., Vol. 8 of 16.
[19] State v. Williams, 91 So.3d 966 (La. 2012); State Rec., Vol. 13 of 16.

the rule did not apply at "the time of arraignment," or like proceedings before the judge.  Blackstone, *supra*, at 317; see also Trial of Christopher Layer, 16 How. St. Tr. 94, 99 (K.B. 1722).  It was meant to protect defendants appearing at trial before a jury.  See King v. Waite, 1 Leach 28, 36, 168 Eng. Rep. 117, 120 (K.B. 1743) ("[B]eing put upon his trial, the Court immediately ordered [the defendant's] fetters to be knocked off").

American courts have traditionally followed Blackstone's "ancient" English rule, while making clear that "in extreme and exceptional cases, where the safe custody of the prisoner and the peace of the tribunal imperatively demand, the manacles may be retained."  1 J. Bishop, New Criminal Procedure § 955, p. 573 (4th ed. 1895); see also id., at 572-573 ("[O]ne at the trial should have the unrestrained use of his reason, and all advantages, to clear his innocence.  Our American courts adhere pretty closely to this doctrine" (internal quotation marks omitted)); State v. Roberts, 86 N.J.Super. 159, 163-165, 206 A.2d 200, 203 (App.Div. 1965); French v. State, 377 P.2d 501, 502-504 (Okla.Crim.App. 1962); Eaddy v. People, 115 Colo. 488, 490, 174 P.2d 717, 718 (1946) (en banc); State v. McKay, 63 Nev. 118, 153-158, 165 P.2d 389, 405-406 (1946); Blaine v. United States, 136 F.2d 284, 285 (CADC 1943) (*per curiam*); Blair v. Commonwealth, 171 Ky. 319, 327-329, 188 S.W. 390, 393 (App. 1916); Hauser v. People, 210 Ill. 253, 264-267, 71 N.E. 416, 421 (1904); Parker v. Territory, 5 Ariz. 283, 287, 52 P. 361, 363 (1898); State v. Williams, 18 Wash. 47, 48-50, 50 P. 580, 581 (1897); Rainey v. State, 20 Tex.App. 455, 472-473, 1886 WL 4636 (1886) (opinion of White, P. J.); State v. Smith, 11 Ore. 205, 8 P. 343 (1883); Poe v. State, 78 Tenn. 673, 674-678 (1882); State v. Kring, 64 Mo. 591, 592 (1877); People v. Harrington, 42 Cal. 165, 167, 1871 WL 1466 (1871); see also F. Wharton, Criminal Pleading and Practice § 540*a*, p. 369 (8th ed. 1880); 12 Cyclopedia of Law and Procedure 529 (1904).  While these earlier courts disagreed about the degree of discretion to be afforded trial judges, … they settled virtually without exception on a basic rule embodying notions of fundamental fairness:  Trial courts may not shackle defendants routinely, but only if there is a particular reason to do so.

More recently, this Court has suggested that a version of this rule forms part of the Fifth and Fourteenth Amendments' due process guarantee.  Thirty-five years ago, when considering the trial of an unusually obstreperous criminal defendant, the Court held that the Constitution sometimes permitted special measures, including physical restraints.  [Illinois v.] Allen, 397 U.S. [337,] 343-344, 90 S.Ct. 1057[, 25 L.Ed.2d 353 (1970)].  The Court wrote that "binding and gagging might possibly be the fairest and most reasonable way to handle" such a defendant.  Id., at 344, 90 S.Ct. 1057.  But the Court immediately added that "even to contemplate such a technique ... arouses a feeling that no person should be tried while shackled and gagged except as a last resort."  Ibid.

Sixteen years later, the Court considered a special courtroom security arrangement that involved having uniformed security personnel sit in the first row of the courtroom's spectator section.  The Court held that the Constitution allowed the arrangement, stating that the deployment of security personnel during trial is

not "the sort of inherently prejudicial practice that, like shackling, should be permitted only where justified by an essential state interest specific to each trial." Holbrook [v. Flynn], 475 U.S. [560,] 568-569, 106 S.Ct. 1340[, 89 L.Ed.2d 525 (1986)]. See also Estelle v. Williams, 425 U.S. 501, 503, 505, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) (making a defendant appear in prison garb poses such a threat to the "fairness of the factfinding process" that it must be justified by an "essential state policy").

Lower courts have treated these statements as setting forth a constitutional standard that embodies Blackstone's rule. Courts and commentators share close to a consensus that, during the guilt phase of a trial, a criminal defendant has a right to remain free of physical restraints that are visible to the jury; that the right has a constitutional dimension; but that the right may be overcome in a particular instance by essential state interests such as physical security, escape prevention, or courtroom decorum. See, e.g., Dyas v. Poole, 309 F.3d 586, 588-589 (C.A.9 2002) (per curiam); Harrell v. Israel, 672 F.2d 632, 635 (C.A.7 1982) (per curiam); State v. Herrick, 324 Mont. 76, 78-82, 101 P.3d 755, 757-759 (2004); Hill v. Commonwealth, 125 S.W.3d 221, 233-234 (Ky. 2004); State v. Turner, 143 Wash.2d 715, 723-727, 23 P.3d 499, 504-505 (2001) (en banc); Myers v. State, 2000 OK CR 25, ¶ 19, 17 P.3d 1021, 1033; State v. Shoen, 598 N.W.2d 370, 374-377 (Minn. 1999); Lovell v. State, 347 Md. 623, 635-645, 702 A.2d 261, 268-272 (1997); People v. Jackson, 14 Cal.App.4th 1818, 1822-1830, 18 Cal.Rptr.2d 586, 588-594 (1993); Cooks v. State, 844 S.W.2d 697, 722 (Tex.Crim.App. 1992) (en banc); State v. Tweedy, 219 Conn. 489, 504-508, 594 A.2d 906, 914-915 (1991); State v. Crawford, 99 Idaho 87, 93-98, 577 P.2d 1135, 1141-1146 (1978); People v. Brown, 45 Ill.App.3d 24, 26-28, 3 Ill.Dec. 677, 358 N.E.2d 1362, 1363-1364 (1977); State v. Tolley, 290 N.C. 349, 362-371, 226 S.E.2d 353, 365-369 (1976); see also 21A Am.Jur.2d, Criminal Law §§ 1016, 1019 (1998); see generally Krauskopf, Physical Restraint of the Defendant in the Courtroom, 15 St. Louis U.L.J. 351 (1970-1971); ABA Standards for Criminal Justice: Discovery and Trial by Jury 15-3.2, pp. 188-191 (3d ed. 1996).

Lower courts have disagreed about the specific procedural steps a trial court must take prior to shackling, about the amount and type of evidence needed to justify restraints, and about what forms of prejudice might warrant a new trial, but they have not questioned the basic principle. They have emphasized the importance of preserving trial court discretion (reversing only in cases of clear abuse), but they have applied the limits on that discretion described in Holbrook, Allen, and the early English cases. In light of this precedent, and of a lower court consensus disapproving routine shackling dating back to the 19th century, it is clear that this Court's prior statements gave voice to a principle deeply embedded in the law. We now conclude that those statements identify a basic element of the "due process of law" protected by the Federal Constitution. Thus, the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury *absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial.* Such a determination may of course take

into account the factors that courts have traditionally relied on in gauging potential security problems and the risk of escape at trial.

Deck v. Missouri, 544 U.S. 622, 626-29 (2005) (emphasis added).

Moreover, even prior to Deck, the United States Fifth Circuit Court of Appeals explained:

[S]hackling a defendant may be necessary to preserve the dignity of the trial and to secure the safety of its participants.  It is immediately apparent that any rule that would accommodate these competing interests rests on the word "necessary".  The required scrutiny must balance the state's interest of safety and decorum against these concerns.  Simply put, a defendant must not be shackled before his jury unless the restraint is necessary to protect the safety of the trial participants or the sanctity of the trial itself.
    ….
    The process due must reflect the inherent case-specific character of the trial court's decision to restrain a defendant and the reality that the issue is usually collateral to the trial itself.  Relatedly, because the trial judge is uniquely situated to make this judgment call he must be given considerable discretion.  Given this discretion, it is not a question of whether, looking back, lesser restraints might have been adequate, although that is relevant.  Rather, it is a question of whether it was reasonable to conclude at the time that the restraint was necessary.  Put another way, necessity does not here trigger a type of "least means" analysis.  That in retrospect some lesser restraint might have sufficed is not determinative.  The trial judge must only have acted reasonably in responding to the scene before him using no more restraint than appeared necessary.

Marquez v. Collins, 11 F.3d 1241, 1244 (5th Cir. 1994).

Here, the state courts fully complied with federal law.  The state district court acknowledged that shackling a defendant during a jury trial is disfavored and should not be employed as a matter of routine; rather, it should be employed only when required to enforce courtroom decorum and security.  Based on petitioner's prior escape, his violent attempts to avoid arrest in the instant case, and the unusual amount of force which would obviously be required to subdue him if he were to make a similar attempt to flee or disrupt the proceedings during trial, the district court found that shackling was warranted in the instant case.  The state supervisory courts found that the trial court did not abuse its discretion in that regard.  The undersigned has no

hesitation whatsoever in similarly concluding that the state court decision was neither contrary to nor an unreasonable application of clearly established federal law.

Further, even if the state court had erred, *which it did not,* petitioner still would not be entitled to relief under the facts of the instant case. The United States Fifth Circuit Court of Appeals has explained:

> If a court erroneously shackles a defendant, the jury receives a powerful image contradicting the presumption of innocence. As a result, "The [s]tate must prove beyond a reasonable doubt that the shackling error complained of did not contribute to the verdict obtained." [Deck v. Missouri, 544 U.S. 622,] 635, 125 S.Ct. [2007,] 2015-16[, 161 L.Ed.2d 953 (2005)] (quoting Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)) (internal quotation marks and brackets omitted). *However, on collateral review of a state court conviction, federal courts apply a more lenient standard, only granting a writ when an error had a "substantial and injurious effect or influence in determining the jury's verdict."* Fry v. Pliler, 551 U.S. 112, 121-22, 127 S.Ct. 2321, 2328, 168 L.Ed.2d 16 (2007) (citing Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)).

Hatten v. Quarterman, 570 F.3d 595, 603-04 (5th Cir. 2009) (emphasis added). Here, even if petitioner's shackling had been erroneous, it simply could not be said that the shackling contributed to the verdict in any substantial way in light of the overwhelming evidence of his guilt.

As to petitioner's claim that his rights were violated by the use of the *handcuffs* during trial, the state argues that portion of his claim is procedurally barred. For the following reasons, the state is correct.

The United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision. To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of

similar claims.  This rule applies to state court judgments on both substantive and procedural grounds.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).

Here, it is beyond question that this claim was denied based on a state procedural rule, i.e. Louisiana's rule that an error is waived absent a contemporaneous objection.  It is further clear that Louisiana's contemporaneous objection rule qualifies as an independent and adequate state procedural rule to support a federal procedural bar.  Duncan v. Cain, 278 F.3d 537, 541-43 (5th Cir. 2002).

Where, as here, the state courts have rejected a petitioner's claim based on an independent and adequate state procedural rule, "federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice."  Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999).  In the instant case, petitioner demonstrates neither.

"To establish cause for a procedural default, there must be something external to the petitioner, something that cannot fairly be attributed to him."  Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted).  Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel.  Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir. 1992).

In the instant case, petitioner essentially argues that ineffective assistance of counsel was the "cause" for his default.  However, for the reasons explained later in this opinion,[20] counsel was

---

[20] See infra pages 25-27.

not in fact ineffective for failing to separately object to the use of the handcuffs.  Therefore, petitioner's ineffective assistance of counsel claim has no merit, and it is clear that a meritless ineffective assistance of counsel claim cannot serve as cause for a procedural default.  Sherill v. Hargett, 184 F.3d 1172, 1176 (10th Cir. 1999); Turner v. Compoy, No. 91-55842, 1993 WL 425372, at *3 n. 2 (9th Cir. Oct. 19, 1993); Stogner v. Cain, Civ. Action No. 12-2703, 2013 WL 2444667, at *21 (E.D. La. June 4, 2013); Arita v. Cain, Civ. Action No. 11-636, 2011 WL 4738666, at *11 (E.D. La. Aug. 25, 2011), adopted, 2011 WL 4738658 (E.D. La. Oct. 6, 2011), aff'd, 500 Fed. App'x 352 (5th Cir. 2012); Davie v. Mitchell, 324 F. Supp. 2d 862, 872 (N.D. Ohio 2004); McLaughlin v. Carroll, 270 F. Supp. 2d 490, 516 (D. Del. 2003).

Because the purported ineffectiveness of counsel cannot serve as cause for the default of this claim, and because petitioner has established no other cause for default of the claim, the Court need not consider whether actual prejudice would result from the application of the procedural bar. Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996) ("Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice.").

In that petitioner has not met the "cause and prejudice" test, this claim is barred from federal review unless the application of the procedural bar would result in a "fundamental miscarriage of justice."  However, in order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him.  Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted."  Finley, 243 F.3d at 220 (citations omitted). However, the United States Supreme Court has cautioned:

> To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be

> exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

Schlup v. Delo, 513 U.S. 298, 324 (1995). Here, petitioner presents no new evidence of the type or caliber referenced in Schlup. Moreover, as noted, the evidence of his guilt in this case was overwhelming. Therefore, he has not established that any miscarriage of justice will result from the application of the procedural bar.

For these reasons, petitioner's claim that his rights were violated by the fact that he was handcuffed during trial is procedurally barred and should not be considered by this Court.

Nevertheless, out of an abundance of caution, the undersigned notes that the claim regarding the use of handcuffs would not warrant relief even if it were not procedurally barred. Like the use of the shackles, the use of handcuffs would likewise be governed by Deck. For the reasons already explained, the trial court did not abuse its discretion in employing restraints during petitioner's trial due to his personal history of escape and violent resistance.

### B.  Ineffective Assistance of Counsel

Petitioner next asserts five ineffective assistance of counsel claims. In the state post-conviction proceedings, the trial court denied those claims, holding:

> Petitioner files an application for post-conviction relief and claims of ineffective assistance of counsel when:
>
> 1.    When counsel failed to object concerning the restraints used on the defendant at trial.
> 2.    When counsel failed to object to improper consolidation of misdemeanor and felony.
> 3.    Counsel failed to subpoena Tiffany Johnson and Diane Woodson for trial.
> 4.    Counsel failed to conduct an adequate independent pretrial investigation.

     5.      Counsel failed to impeach key prosecution witnesses.

It is clear that the petitioner has a Sixth Amendment right to effective legal counsel. Under the well-known standard set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and State v. Washington, 491 So.2d 1337 (La. 1986), a conviction must be reversed if the defendant proves (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect. State v. Legrand, 2002-1462 (La. 12/3/03) 864 So.2d 89.

To be successful in arguing a claim of ineffective assistance of counsel, a post-conviction petitioner must prove deficient performance to the point that counsel is not functioning as counsel within the meaning of the Sixth Amendment. A petitioner must also prove actual prejudice to the point that the results of the trial cannot be trusted. It is absolutely essential that both prongs of the Strickland test must be established before relief will be granted by a reviewing court.

Furthermore, there is a strong presumption that counsel's performance is within the wide range of effective representation. Effective counsel, however, does not mean errorless counsel and the reviewing court does not judge counsel's performance with the distorting benefits of hindsight, but rather determines whether counsel was reasonably likely to render effective assistance. State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075.

Mindful of controlling federal and state jurisprudence, this court now turns to the specific claims of ineffective assistance made in petitioner's application and argued in the memorandum in support, as well as the State's response.

Claim #1

Petitioner claims that trial counsel was ineffective in regards to the shackling, and failure to "lodge an objection to the total manner of restraints." The court finds no merit to this claim. As the State points out in its response, the court took ample precautions to ensure that the jury did not see the defendant in shackles, as noted in the appellate court's opinion. The defendant fails to prove that the jury saw him shackled, that any juror was influenced by possibly seeing restraints, or that any prejudice resulted. The court finds no deficiency in counsel's performance.

Claim #2

Petitioner claims that counsel was ineffective for failing "to object to improper consolidation of the misdemeanor and felony bill of information(s)." As the State points out in its response, this goes to trial strategy. The Supreme Court emphatically directed that, "in evaluating the performance of counsel, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466

U.S. at 690-691, 104 S.Ct. 2052, 80 L.Ed.2d 674. The record reflects that defense's trial strategy included presenting to the jury facts surrounding the misdemeanors, and that petitioner was "adamant" about this defense, though advised against it by his trial counsel. The court finds no merit to this claim.

Claim #3

Petitioner claims that counsel was ineffective for failing to subpoena Tiffany Johnson and Diane Woodson for trial. The record reflects that counsel was in contact with both witnesses, and the court refused to grant defense a continuance to ensure the witnesses's appearances.

Furthermore, petitioner fails to prove that these witnesses' testimony would have changed the outcome of the trial. The State presented overwhelming evidence against the defendant. Petitioner's claim that two witnesses' testimony would have exonerated him is speculative and conclusory. The court finds no merit to this claim.

Claim #4

Petitioner claims that counsel failed to properly conduct pre-trial investigation. And foirst [sic] argues that counsel failed to investigate when Officer Poche lost sight of the suspect. The court finds no merit to this claim, and petitioner's claim is speculative. Petitioner fails to prove what further investigation would have rendered.

Petitioner claims that counsel failed to investigate the wallet and sweatpants in light of defendant being searched twice, but fails to make any argument how this may have resulted in deficiency in counsel's performance, or prejudice resulting. The court finds no merit to this claim.

Petitioner claims that counsel failed to investigate the shirt in the surveillance video. However, as the State points out, counsel objected to the video being presented in court, and urged the court that the State not be allowed to present photos of the defendant wearing the shirt without the State first producing the shirt. The court finds no deficiency in counsel's performance.

Petitioner does not prove that further investigation would have changed the outcome of the trial. The defendant was convicted based upon overwhelming evidence of guilt presented to the jury. Nothing in relation to this claim proves any prejudice, or how the outcome of the trial would have changed.

Claim #5

Petitioner argues that counsel failed to impeach prosecution witnesses, specifically police officers. He claims that the police were lying regarding the chase and that the officer destroyed the shirt in bad faith. The court finds no merit to this claim, and no deficiency in counsel's performance. Petitioner was convicted based on the overwhelming evidence of guilt which was presented at trial. Petitioner's claim is speculative and conclusory, as petitioner fails to prove how

counsel could have impeached these witnesses, or how it could have changed the outcome of the trial.[21]

The Louisiana Fifth Circuit Court of Appeal then likewise denied relief, holding:

> Upon careful review of the entirety of relator's extensive writ application, including the exhibits attached thereto, we find that the district court did not err in denying relator's application for post-conviction relief in its February 21, 2014 ruling.  First, we find that relator has failed to present any evidence that would support his position that his trial counsel was ineffective under the standards set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and Florida v. Nixon, 543 U.S. 175, 187, 125 S.Ct. 551, 560, 160 L.Ed.2d 565 (2004).  We find that the district court properly surmised that relator's claims were either adequately addressed on appeal (claim one), strategic choices (trial strategy) (claim two), or speculative and conclusory (claims three, four, and five).  Thus, the district court properly concluded that relator failed to prove any deficiencies in counsel's performance or prejudice resulting therefrom.  Further we find no merit to relator's request for an evidentiary hearing, as both the factual and legal issues presented were properly resolved by the district court based upon the application, and the State's response thereto.  See La. C.Cr.P. art. 929(A).  This writ application is accordingly denied.[22]

The Louisiana Supreme Court thereafter also denied relief without assigning additional reasons.[23]

Because petitioner's ineffective assistance of counsel claims were denied on the merits and present mixed questions of law and fact, this Court must defer to the state court decision rejecting those claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

---

[21] State Rec., Vol. 12 of 16, Order dated February 21, 2014.
[22] Williams v. Cain, No. 14-KH-206 (La. App. 5th Cir. Apr. 24, 2014); State Rec., Vol. 14 of 16.
[23] State *ex rel.* Williams v. State, 162 So.3d 394 (La. 2015); State Rec., Vol. 14 of 16.

The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted). The Supreme Court then explained:

Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under §

> 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

Id. at 105 (citations omitted; emphasis added). Therefore, on habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt." Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted). For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's five ineffective assistance of counsel claims.

Here, the state court correctly identified the clearly established federal law which governs ineffective assistance of counsel claims: Strickland v. Washington, 466 U.S. 668 (1984). Strickland established a two-prong test for evaluating such claims. Specifically, a petitioner seeking relief must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. Id. at 697. A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if

it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Matheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

Because it is beyond question that the state court correctly identified Strickland as the controlling federal law, the only remaining issue is whether its application of Strickland was unreasonable. For the following reasons, it was not.

### 1.  Failure to Adequately Object to Restraints

First, petitioner argues that counsel was ineffective for failing "to lodge a sufficient objection concerning the total manner of restraints used during trial and fail[ing] to request

precautionary measures to ensure that jurors would remain unaware of the restraint."[24]  The Court

can easily dispose of this claim.  As a preliminary matter, "a decision of counsel to forgo a

particular objection is generally one of trial strategy, and, as such, is normally insufficient to

support an ineffective assistance claim."  Rick v. Cain, Civ. Action No. 12-2617, 2013 WL

6388641, at *7 (E.D. La. Dec. 4, 2013); accord Rios-Delgado v. United States, 117 F. Supp. 2d

581, 589 (W.D. Tex. 2000) ("Generally speaking, a failure to object, standing alone, does not rise

to the level of constitutionally deficient performance. In cases where an accused complains that

counsel was ineffective because he did not object to something ..., the courts grant significant

deference, as such actions fall squarely within the ambit of trial strategy.").  Nevertheless, even if

counsel's failure to object in this manner could be considered deficient performance, petitioner's

claim still fails because he cannot show prejudice.  As already explained herein, the trial court

acted properly in imposing the restraints, and so any further objections on this issue would have

been meritless and counsel was therefore not ineffective for failing to make them.  See, e.g., United

States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless

argument ... cannot form the basis of a successful ineffective assistance of counsel claim because

the result of the proceeding would not have been different had the attorney raised the issue.");

Sones v. Hargett, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to

press a frivolous point."); Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise

meritless objections is not ineffective lawyering; it is the very opposite.").  Moreover, again, the

evidence of petitioner's guilt was overwhelming, and so he cannot show a reasonable probability

---

[24] Rec. Doc. 3, p. 6.

that the result of the proceeding would have been different if only his counsel had objected in a broader or more emphatic manner.

## 2.  Failure to Object to Joinder of Offenses

Second, petitioner argues that counsel was ineffective for failing "to object to the improper consolidation of misdemeanor and felony bill of information(s) and for her overall conduct concerning the issue."[25]  As noted above, petitioner was also charged with six misdemeanor offenses:  flight from an officer; resisting an officer; three counts of battery on a police officer; and reckless operation of a vehicle.  Ultimately those charges were consolidated for trial with the felony armed robbery charge, with the misdemeanor charges being decided by the judge and the felony charge being decided by the jury.

However, as the state court noted in denying this claim, and as the state reiterates in its response in this federal proceeding, it was petitioner who, against the advice of his counsel, insisted on the charges being tried together.  The issue was discussed at length at a pretrial hearing on March 17, 2008.  At that hearing, defense counsel noted that petitioner wanted to postpone the trial in order to secure an expert who could testify concerning the use of tasers by law enforcement officers.  The judge observed that such testimony would not be relevant to the robbery charge; its relevance, if any, would be limited to the misdemeanor charges which the court anticipated would be tried separately.  The following exchange then occurred:

> MS. NAQUIN [defense counsel]:
>     Your Honor, I believe it goes to the manner in which Mr. Williams was arrested and whether or not it could have occurred as the officers contend that it did occur.  And it will probably end up being a credibility issue.
>
> THE COURT:

---

[25] Rec. Doc. 3, p. 6.

I would be very surprised if a scenario could be presented to me where I would allow the incident that I understood from the officers testimony to – took place after he was apprehended. I would be very surprised if I'd let any of that go to the jury in this armed robbery or convicted-felon-with-a-weapon charge. I think it would taint a jury contrary to the defendant's position. So, I would look for a defense motion to sever, anyway. Thus, my hesitation in even considering any taser information at the armed robbery trial.[26]

However, defense counsel then noted that petitioner felt those issues were crucial to his defense and so wanted them covered at trial:

MS. NAQUIN:
Your Honor, I believe it would be very difficult to present a defense for Mr. Williams without going into the circumstances surrounding how he was arrested and then there was the show-up.
Your Honor, I understand what you are saying –

THE COURT:
Mr. Williams is agreeing with the State, or you, on his behalf, is agreeing with the State that the circumstances of his arrest would go to this jury?

MS. NAQUIN:
Your Honor, I have advised Mr. Williams –

THE COURT:
I'm just trying to find out where you are right now.
If you are telling me that you want this jury to hear the circumstances of his arrest at the same time that they consider the armed robbery. Is that what you are suggesting?

MS. NAQUIN:
You Honor, that's what it appears to be. I would love to put on the record that I've discussed this with Mr. Williams and he believes he can not present a defense through me without that information being solicited from the witnesses. This is why he wishes to be co-counsel.[27]

The judge then again stated, "I don't think it would be a good idea to try these misdemeanors at the same time as the armed robbery and the convicted-felon-with a weapon

---

[26] State Rec., Vol. 7 of 16, transcript of March 17, 2008, pp. 16-17.
[27] Id. at pp. 18-19.

charge."[28]  However, the prosecution stated it desired a consolidated trial on all charges.  Although defense counsel indicated that she, too, felt it would be prejudicial to have the events of the apprehension covered at trial, she nevertheless stated that if her client wanted that those events discussed at trial, "then I am obligated to do that."[29]  After continued equivocation by defense counsel, she finally stated:

> Your Honor, at this time, we would waive any motion for severance.  And whatever the State elects to do in regard to the misdemeanors, it's my understanding that it's their option whether or not to try these matters together.  We are not going to file a motion to sever and don't want to object to the matters being tried together.[30]

Two days later, the issue was again addressed at another pretrial hearing, and defense counsel again stated that petitioner was insisting that he wanted those issues to be covered at trial despite her advice to the contrary:

> MS. NAQUIN:
> With reference to the misdemeanors, Your Honor, and whether or not they will be allowed at trial, I discussed this matter with Mr. Williams and he adamantly insists that he cannot present our defense, we cannot present our defense without introducing that evidence, Your Honor, or without attacking that evidence.
> Therefore, although I've advised against it, I understand that Mr. Williams has to present this defense and we will not object to the misdemeanors being tried with the felonies.[31]

The judge then continued to press defense counsel for an unequivocal answer to his concerns:

> THE COURT:
> ….
> So my question to you, not to Mr. Williams, my question to you is is it your decision to insist that these cases be tried together?
>
> MS. NAQUIN:

---

[28] Id. at p. 20.
[29] Id. at p. 22.
[30] Id at p. 25.
[31] State Rec., Vol. 6 of 16, transcript of March 19, 2008, p. 8.

Your Honor, it is my decision to present my client's defense.  And in order to present my client's defense these cases have to be tried together.  That's the best I can do.

THE COURT:

That's an answer to another question, cause we know they don't have to be tried together, we know that this Court would sever them.  We know the defendant was insistent upon them being tried with the armed robbery case and the convicted felon with a weapon charge.

All I want to know is, he's now said he's not going to represent himself.  He's now said you're going to represent him.  He understands that you make the tactical decisions in this case.

And so, my question is un-watered down, is it your decision not to ask for a severance?

MS. NAQUIN:

Can I have one second, Your Honor?

THE COURT:

Yes, ma'am.

[A DISCUSSION WAS HELD OFF THE RECORD.]

MS. NAQUIN:

Yes, Your Honor, I will need the misdemeanors to be tried along with felonies.

THE COURT:

You will need them?

MS. NAQUIN:

Yes, sir.

THE COURT:

There you are, that's all I want to know. …[32]

However, at the beginning of trial, the issue was then addressed yet again:

THE COURT:

Mr. Williams is charged with armed robbery.  He also has a convicted felon with a weapon.  It is my understanding is that that charge has been severed, and we'll just try the armed robbery.  It's accused that he had a gun, but the State is not

---

[32] Id. at pp. 9-10.

30

looking to enhance the charge, because of the firearm, so it will be a straight up 14:64 armed robbery charge.

MR. ESCUDIER [the prosecutor]:
>    That's correct, Your Honor.

MRS. NAQUIN:
>    Yes, sir.

MR. ESCUDIER:
>    And also the Defendant is charged with numerous misdemeanor offenses, which we've already discussed will be tried at the same time by the Court.

MRS. NAQUIN:
>    As requested by the Defense, Your Honor.

THE COURT:
>    All right.  Let the record so reflect. …[33]

A critical flaw with respect to this ineffective assistance claim is that it was *petitioner* who, despite his counsel's contrary advice, *insisted* on pursuing a line of defense founded on his allegations of misconduct by the officers during the arrest.  As a result, he cannot now argue that his lawyer was ineffective for acceding to his demands.  Simply put:  "Assuming the client makes an informed decision, following one's client's instructions almost never constitutes ineffective assistance of counsel."  Cook v. Cockrell, No. 01-40639, 2002 WL 495455, at *2 (5th Cir. Mar. 18, 2002); accord Shore v. Davis, No. 16-70008, 2017 WL 74272, at *4 (5th Cir. Jan. 6, 2017) ("A defendant cannot raise a Strickland claim based on counsel's compliance with his instructions."); Buchanan v. Cain, Civ. Action No. 6:14-cv-0840, 2015 WL 4545130, at *10 (W.D. La. July 27, 2015) ("Counsel is charged only with a duty to assist a defendant; he is not a master of the defense. Accordingly, if a defendant knowingly makes a choice, her attorney is ethically bound to follow

---

[33] State Rec., Vol. 9 of 16, transcript of July 31, 2008, pp. 8-9.

the defendant's wishes." (citation omitted)); <u>United States v. Huff</u>, Crim. Action No. 01-008, 2007 WL 846533, at *3 (E.D. La. Mar. 15, 2007) ("Courts have declined to characterize counsel's performance as ineffective assistance when counsel acted according to the defendant's restrictions on strategy."). As the United States Fifth Circuit Court of Appeals explained when rejecting a similar argument:

> Cutting through the smoke, it is apparent that we are being asked to permit a defendant to avoid conviction on the ground that his lawyer did exactly what he asked him to do. That argument answers itself. As the Eleventh Circuit noted in <u>Mulligan v. Kemp</u>:
>
>> At the start, we note that a defendant's Sixth Amendment rights are his alone, and that trial counsel, while held to a standard of "reasonable effectiveness," is still only an *assistant* to the defendant and not the master of the defense.... Because we recognize that a defendant must have this broad power to dictate the manner in which he is tried, it follows that, in evaluating strategic choices of trial counsel, we must give great deference to choices which are made under the explicit direction of the client.

771 F.2d 1436, 1441 (11th Cir. 1985), <u>cert. denied</u>, 480 U.S. 911, 107 S.Ct. 1358, 94 L.Ed.2d 529 (1987). The Eleventh Circuit held in <u>Mulligan</u> that "if [counsel] is commanded by his client to present a certain defense, and if he does thoroughly explain the potential problems with the suggested approach, then his ultimate decision to follow the client's will may not be lightly disturbed." 771 F.2d at 1442. This circuit reached similar results in a case where the client insisted on an alibi defense instead of an insanity defense. <u>Lowenfield v. Phelps</u>, 817 F.2d 285, 292 (5th Cir. 1987), <u>cert. granted on other grounds</u> 483 U.S. 1005, 107 S.Ct. 3227, 97 L.Ed.2d 734 (1987), and <u>aff'd</u>, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). The court stated:

> Lowenfield's directions were entitled to be followed. The circumstances are extremely rare when counsel is not required to follow his client's instructions on a decision of this nature.

<u>Id</u>. <u>See also</u> <u>Autry v. McKaskle</u>, 727 F.2d 358 (5th Cir.), <u>cert. denied</u>, 465 U.S. 1090, 104 S.Ct. 1462, 79 L.Ed.2d 909 (1984). In <u>Autry</u>, the defendant did not want his lawyer to fight the death penalty, as Autry preferred death to life imprisonment, and he would not allow his counsel to develop mitigating evidence at the sentencing phase. On appeal Autry argued that his trial counsel should have pressed for an

inquiry into the mental competence of the defendant before proceeding in accordance with his wishes not to fight the death penalty.  This court rejected that contention.  Id. at 361-62.  "If [the defendant] knowingly made the choices, [his attorney] was ethically bound to follow [the defendant's] wishes."  Id.

United States v. Masat, 896 F.2d 88, 92-93 (5th Cir. 1990).

Moreover, in any event, *even if* the Court were nevertheless to find that counsel performed deficiently by following her client's instructions, petitioner's claim would still fail because he cannot show the prejudice required to support his claim.  Assuming counsel had moved for severance and all evidence relating to the misdemeanor charges was held to be inadmissible, petitioner would still have been found guilty of the felony charge.  As already noted, the evidence of petitioner's guilt of the armed robbery charge was overwhelming, and, therefore, there is no reasonable probability that the result of the proceeding would have been different if only the misdemeanor charges had been severed.[34]

### 3.  Failure to Subpoena Witnesses

Third, petitioner argues that counsel was ineffective for failing "to subpoena Tiffany Johnson and Diane Woodson for trial."[35]  However, as the United States Fifth Circuit Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain.  For this reason, *we require petitioners making claims of ineffective*

---

[34] The Court notes that, in connection with this claim, petitioner makes a related argument that counsel should have requested a cautionary instruction advising the jurors of the purposes for which they could and could not consider the evidence introduced regarding the events which resulted in the misdemeanor charges.  However, even if the Court assumes that such an instruction would have been appropriate and that counsel performed deficiently for failing to request it, that argument likewise fails because petitioner cannot show any resulting prejudice.  Again, he was convicted based on the overwhelming evidence of his guilt of the armed robbery, and that verdict simply cannot be said to have been attributable to the evidence regarding the misdemeanor offenses.  Therefore, there is no reasonable probability that the result of the proceeding would have been different if only a cautionary instruction had been requested.

[35] Rec. Doc. 3, p. 6.

> *assistance based on counsel's failure to call a witness to demonstrate prejudice by*
> *naming the witness, demonstrating that the witness was available to testify and*
> *would have done so, setting out the content of the witness's proposed testimony,*
> *and showing that the testimony would have been favorable to a particular defense.*
> This requirement applies to both uncalled lay and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets

omitted; emphasis added); accord Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o

prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner

must name the witness, demonstrate that the witness was available to testify and would have done

so, set out the content of the witness's proposed testimony, and show that the testimony would

have been favorable to a particular defense.").

  Here, petitioner presented no evidence, such as affidavits from the uncalled witnesses,

demonstrating that they would have testified in a manner beneficial to the defense.  Therefore, he

obviously failed to meet his burden of proof with respect to this claim.  See, e.g., United States v.

Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of

ineffective assistance of counsel when the only evidence of a missing witness's testimony is from

the defendant"); Buniff v. Cain, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July

7, 2011); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29,

2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a

petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on

that issue."); Combs v. United States, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844,

at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar

matter, from the alleged favorable witnesses suggesting what they would have testified to, claims

of ineffective assistance of counsel fail for lack of prejudice."); Harris v. Director, TDCJ-CID, No.

6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

### 4. Failure to Conduct Adequate Investigation

Fourth, petitioner argues that counsel was ineffective for failing "to conduct an adequate independent pretrial investigation."[36]   However, as the state court noted, the problem is that petitioner failed to provide any evidence in support of that allegation.  He did not establish that counsel's investigation was in fact inadequate in any respect – on the contrary, he presented no evidence whatsoever as to what investigative steps counsel actually took or failed to take.  Without such evidence, he cannot show that counsel performed deficiently.

Further, even if petitioner had made that showing, he would then additionally have to prove that prejudice in fact resulted from the purportedly inadequate investigation and discovery.  To make that showing, he must point to evidence in the record demonstrating that further investigation and discovery would have revealed additional information beneficial to the defense.  See Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009), aff'd, 641 F.3d 96 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec.11, 2008).  Here, he has not shown that any such beneficial information would have been revealed by further investigation and discovery; rather, his assertions are entirely speculative.  It is beyond cavil that such bare speculation does not suffice to meet his

---

[36] Rec. Doc. 3, p. 6.

burden of proof.  See Thomas v. Cain, Civ. Action No. 09-4425, 2009 WL 4799203, at *9 (E.D. La. Dec. 9, 2009).

### 5.  Failure to Adequately Impeach the State's Witnesses

Fifth, petitioner argues that counsel was ineffective for failing "to impeach key prosecution witnesses."[37]  However, it is clear that "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment." Ford v. Cockrell, 315 F. Supp. 2d 831, 859 (W.D. Tex. 2004), aff'd, 135 Fed. App'x 769 (5th Cir. 2005); accord Lewis v. Cain, Civ. Action No. 09-2848, 2009 WL 3367055, at *8 (E.D. La. Oct. 16, 2009), aff'd, 444 Fed. App'x 835 (5th Cir. 2011); Williams v. Cain, Civ. Action Nos. 06-0224 and 06-0344, 2009 WL 1269282, at *11 (E.D. La. May 7, 2009), aff'd, 359 Fed. App'x 462 (5th Cir. 2009); Packnett v. Cain, Civ. Action No. 06-5973, 2008 WL 148486, at *11 (E.D. La. Jan. 10, 2008); Parker v. Cain, 445 F. Supp. 2d 685, 710 (E.D. La. 2006). The United States Supreme Court has cautioned courts not to second-guess counsel's decisions on such tactical matters through the distorting lens of hindsight; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy.  Strickland, 466 U.S. at 689. Moreover, it is irrelevant that another attorney might have made other choices or handled such issues differently.  As the Supreme Court noted:  "There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way."  Id.

---

[37] Rec. Doc. 3, p. 6.

In the instant case, defense counsel vigorously cross-examined the state's witnesses, and the Court finds that she did so adequately. Although petitioner faults his counsel for not going further by attempting to actually impeach the witnesses, he has not established that there was in fact a colorable basis for such impeachment. Petitioner *alleges* that the witnesses were lying, but he has produced no convincing *evidence* of actual lies. Without such evidence, he cannot establish either that his counsel performed deficiently in this respect or that prejudice resulted.

### 6. Petitioner's Reply

Out of an abundance of caution, the undersigned will make the following additional observations concerning petitioner's failure to meet his burden of proof with respect to his ineffective assistance of counsel claims. In his reply to the state's response, petitioner argues that his failure in that regard is attributable to the fact that the state court failed to hold an evidentiary hearing on his post-conviction claims.[38] However, for the following reasons, it is clear that such an argument is insufficient to absolve him for his failure to produce supporting evidence.

First, a petitioner's complaint that the state courts erred in failing to hold an evidentiary hearing is not cognizable in a federal habeas proceeding. Louisiana law expressly provides for summary disposition of post-conviction applications: "If the court determines that the factual and legal issues can be resolved based upon the application and answer, and supporting documents, including relevant transcripts, depositions, and other reliable documents submitted by either party or available to the court, the court may grant or deny relief without further proceedings." La. Code Crim. P. art. 929(A). Further, a state court's decision on such matters is not reviewable in federal court. As one court recently explained:

---

[38] Rec. Doc. 14, p. 2.

To the extent that petitioner complains that the State Court denied his post-conviction application without holding an evidentiary hearing pursuant to Louisiana Code of Criminal Procedure article 929(A), that claim is not cognizable in this federal habeas corpus proceeding.  In this case, the trial court determined that it could properly resolve petitioner's post-conviction application pursuant to article 929(A).  Federal courts "do not sit as a super state supreme court...." Taylor v. Cain, 2010 WL 6620876, *12 (W.D. La. 2010) citing Skillern v. Estelle, 720 F.2d 839, 852 (5th Cir. 1983).  Thus, it is not the province of this court to determine if the state courts properly applied state law. Id. citing Estelle v. McGuire, 502 U.S. 62, 68, 112 S.Ct. 475, 480 (1991) and Narvaiz v. Johnson, 134 F.3d 688 (5th Cir. 1998).  Moreover, the Fifth Circuit has repeatedly held that defects in a state habeas proceeding are not cognizable under 28 U.S.C. § 2254. Id. (and cases cited therein including Moore v. Dretke, 369 F.3d 844, 846 (5th Cir. 2004), Rudd v. Johnson, 256 F.3d 317, 319-20 (5th Cir.), cert. denied, 534 U.S. 1001, 122 S.Ct. 477, 151 L.Ed.2d 391 (2001), Trevino v. Johnson, 168 F.3d 173, 180 (5th Cir. 1999); Kidd v. Keith, 2014 WL 463056, *5 (W.D. La. 2014) (citations omitted).

Pitts v. Tanner, Civ. Action No. 6:14-cv-3145, 2015 WL 10045174, at *23 (W.D. La. Dec. 14, 2015), adopted, 2016 WL 554884 (W.D. La. Feb. 10, 2016); accord Netter v. Cain, Civ. Action No. 15-584, 2016 WL 7157028, at *13-14 (E.D. La. Oct. 6, 2016), adopted, 2016 WL 7116070 (E.D. La. Dec. 12, 2016); Ross v. Vannoy, Civ. Action No. 16-2568, 2016 WL 4991537, at *9-10 (E.D. La. July 5, 2016), adopted, 2016 WL 4942846 (E.D. La. Sept. 16, 2016); Smith v. Terrell, Civ. Action No. 09-3791, 2009 WL 4799190, at *3 (E.D. La. Dec. 7, 2009).

Second, the Court further notes that petitioner also is not entitled to a federal evidentiary hearing to secure new evidence at this stage of review.  On the contrary, the United States Supreme Court has expressly stated:

We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.  Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law.  This backward-looking language requires an examination of the state-court decision at the time it was made.  It follows that the record under review is limited to the record in existence at that same time i.e., the record before the state court.

> This understanding of the text is compelled by "the broader context of the statute as a whole," which demonstrates Congress' intent to channel prisoners' claims first to the state courts. The federal habeas scheme leaves primary responsibility with the state courts. Section 2254(b) requires that prisoners must ordinarily exhaust state remedies before filing for federal habeas relief. It would be contrary to that purpose to allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively *de novo*.
>
> Limiting § 2254(d)(1) review to the state-court record is consistent with our precedents interpreting that statutory provision. Our cases emphasize that review under § 2254(d)(1) focuses on what a state court knew and did. State-court decisions are measured against this Court's precedents as of the time the state court renders its decision. To determine whether a particular decision is "contrary to" then-established law, a federal court must consider whether the decision applies a rule that contradicts such law and how the decision confronts the set of facts that were before the state court. If the state-court decision identifies the correct governing legal principle in existence at the time, a federal court must assess whether the decision unreasonably applies that principle to the facts of the prisoner's case. It would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court.

Cullen v. Pinholster, 563 U.S. 170, 181-83 (2011) (citations, quotation marks, brackets, and ellipsis omitted). See Netter, 2016 WL 7157028, at *14; Ross, 2016 WL 4991537, at *10.

In summary, to be entitled to relief, petitioner must demonstrate that, based on the record as it existed before the state court, the state court decision rejecting his five ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. He has not made that showing in the instant case. Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Terrence M. Williams be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this eighth day of March, 2017.


**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**